FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

DarrasLaw

3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone:   (909) 390-3770
Facsimile:   (909) 974-2121

Attorneys for Plaintiff
TERRY MCDONALD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| TERRY MCDONALD, | Case No: |
|---|---|
| Plaintiff, | |
| vs. | COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; and, DIEBOLD, INCORPORATED LONG TERM DISABILITY INSURANCE PLAN, | |
| Defendants. | |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq*. (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331, as this action involves a federal question.

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for administrative internal

appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

3. The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. § 1391(b)(2), and the ends of justice so require.

4. Plaintiff is informed and believes and thereon alleges that the DIEBOLD, INCORPORATED LONG TERM DISABILITY INSURANCE PLAN ("Plan") is an employee welfare benefit plan established and maintained by Diebold, Incorporated to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, TERRY MCDONALD, with income protection in the event of a disability and is the Plan Administrator.

5. Plaintiff alleges upon information and belief that Defendant, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA ("PRUDENTIAL"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

6. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that Defendant PRUDENTIAL, which fully insured the policy and which is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about May 13, 1901, PRUDENTIAL has been registered as a corporation with the state of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

7. At all relevant times Plaintiff was a resident and citizen of the state of California, an employee of Diebold, Incorporated, its successors, affiliates and/or subsidiaries, and a participant in the Plan.

8. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number G-51710-OH (the "Policy") that had been issued by Defendant PRUDENTIAL to Diebold,

Incorporated to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

9. Based upon information and belief, Plaintiff alleges that the subject Policy promised to pay Plaintiff monthly long term disability benefits for a specified period of time should he become disabled. Therefore, PRUDENTIAL both funds and decides whether claimants will receive benefits under the Plan and as such suffers from a structural conflict which requires additional skepticism.

10. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plan, if Plaintiff became disabled, PRUDENTIAL promised to pay long term disability benefits to Plaintiff as follows:

- "You are disabled when Prudential determines that:
  - you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
  - you are under the regular care of a doctor; and
  - you have a 20% or more loss in your earnings due to that sickness or injury."
- "After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
  - you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience; and
  - you are under the regular care of a doctor."
- Elimination Period: 180 days
- Monthly Benefit: 60% of your monthly earnings, but not more than the Maximum Monthly Benefit.
- Maximum Monthly Benefit: $25,000.00.
- Maximum Period of Benefits: Normal Retirement Age, here age 67

11. Prior to his disability, Plaintiff was employed as an Associate Firstline

Technician for Diebold, Incorporated.

12. On or about November 06, 2015, Plaintiff presented to the emergency department with sternum pain and left shoulder pain after he was involved in a motor vehicle accident at work.

13. Also on or about November 06, 2015, Plaintiff underwent an x-ray of his left shoulder which showed degenerative changes of the acromioclavicular joint.

14. On or about November 09, 2015 Plaintiff became disabled under the terms of the Plan and subsequently submitted a claim to PRUDENTIAL for payment of disability benefits.

15. On or about November 10, 2015, Plaintiff underwent an x-ray of his left wrist which showed scapholunate advanced collapse and cystic changes within the capitate, scaphoid, and ulnar styloid process.

16. On or about November 11, 2015, Plaintiff presented to occupational medicine physician Dr. Amy Reese with chronic left shoulder pain, chronic right wrist pain, and neck pain and left wrist pain following his motor vehicle accident. Physical exam revealed tenderness to palpation in the neck and left upper extremity with limited range of motion. Dr. Reese provided disability work restrictions.

17. On or about November 18, 2015, Plaintiff underwent x-rays of his cervical, lumbar, and thoracic spine which showed multilevel degenerative changes.

18. On or about December 16, 2015, Plaintiff presented to orthopaedic surgeon Dr. Nirav Hasmukh Amin with left shoulder pain. Physical exam revealed tenderness to palpation, diminished strength, positive special tests, and tremor at rest. Dr. Amin diagnosed massive left rotator cuff tear, and recommended Plaintiff continue with shoulder injections.

19. On or about February 08, 2016, Plaintiff presented to rheumatologist Dr. Babak Zamiri with multiple joint pain, osteopenia, ankylosing spondylitis, and sacroiliitis. Humira was prescribed.

20. On or about August 30, 2016, PRUDENTIAL approved Plaintiff's claim for long-term disability benefits.

21. On or about October 31, 2016, Plaintiff underwent a Qualified Medical Examination with orthopedic surgeon Dr. Anthony T. Fenison. Physical exam revealed tenderness to palpation and reduced range of motion in the cervical spine and tenderness to palpation, weakness, and reduced range of motion in the left shoulder. Plaintiff was declared permanent and stationary and given restrictions and limitations precluding return to work in his regular occupation.

22. On or about January 10, 2017, Plaintiff's primary care physician, Dr. Mohammed Osmani, completed a Capacity Questionnaire at PRUDENTIAL's request certifying his disability and opining he was unable to return to full-time or part-time work.

23. On or about April 28, 2017, the Social Security Administration found Plaintiff totally disabled from any occupation – not just his own occupation, as of November 06, 2015, and awarded Plaintiff Social Security disability benefits.

24. On or about December 19, 2017, Plaintiff underwent a Bone Density Scan which showed total hip osteopenia and osteopenia of the lumbar spine.

25. On or about January 16, 2018, Dr. Mohammed Osmani completed a Capacity Questionnaire at PRUDENTIAL's request continuing to certify Plaintiff's disability and opining permanent disability.

26. On or about June 15, 2018, Plaintiff underwent an x-ray of his lumbar spine which showed multilevel moderately severe degenerative changes with disc disease, mild to moderately progressed from previous study.

27. Also on or about June 15, 2018, Plaintiff underwent an x-ray of his thoracic spine which showed moderate thoracic spondylosis.

28. Also on or about June 15, 2018, Plaintiff underwent an x-ray of his left foot which showed moderately severe osteoarthritis.

29. Also on or about June 15, 2018, Plaintiff underwent an x-ray of his right ankle which showed prominent degenerative changes, osteoarthritis, and osteopenia.



30. On or about June 26, 2018, PRUDENTIAL approved Plaintiff's claim under the "any occupation" definition of disability in the policy.

31. On or about October 01, 2018, Plaintiff underwent an x-ray of his left wrist which showed osteoarthritis, chronic scaphoid fracture and perilunate dislocation, and probable chondrocalcinosis of the ulnocarpal joint.

32. On or about January 23, 2019, Plaintiff underwent an x-ray of his right wrist which showed scapholunate advanced collapse with evidence of lunate deformity and perilunate subluxation, osteoarthrosis, and osteopenia.

33. On or about February 05, 2019, Plaintiff presented to orthopedic surgeon Dr. Andrew S. Wong with bilateral wrist pain. Physical exam revealed tremor and weakness of the right arm and hand motion and bilateral moderate tenderness and swelling, diffuse tenderness over the radiocarpal joint, and reduced range of motion with pain. X-rays revealed severe arthritic and erosive changes in the bilateral wrists.

34. On or about December 13, 2019, Dr. Mohammed Osmani completed a Capacity Questionnaire at PRUDENTIAL's request continuing to certify Plaintiff's disability and continuing to opine permanent disability.

35. On or about July 29, 2020, Plaintiff presented to Dr. Babak Zamiri with persistent multiple joint pain. Enbrel and Prednisone were prescribed for ankylosing spondylitis, and Meloxicam and Tramadol were prescribed for osteoarthritis.

36. On or about November 04, 2020, Plaintiff presented to Dr. Mohammed Osmani for a follow up visit. Neurological exam revealed diminished rapid alternating movement, abnormal finger to nose bilaterally, and diminished right upper extremity motor with tremor.

37. On or about November 09, 2020, Dr. Mohammed Osmani completed a Capacity Questionnaire at PRUDENTIAL's request continuing to opine permanent disability, with restrictions and limitations of no right-sided handling/mousing, fingering, or keyboarding and occasional left-sided handling/mousing, fingering, and keyboarding.

38. On or about February 26, 2021, PRUDENTIAL denied Plaintiff's claim for ongoing long-term disability benefits as of February 18, 2021.

39. On or about March 18, 2021, Plaintiff underwent an x-ray of his left hand which showed scapholunate advanced collapse of the wrist and first and second MCP joint arthropathy secondary to calcium pyrophosphate deposition disease.

40. Also on or about March 18, 2021, Plaintiff underwent an x-ray of his right hand which showed scapholunate advanced collapse of the wrist probably from pyrophosphate deposition disease.

41. On or about March 22, 2021, Plaintiff presented to Dr. Babak Zamiri for a follow up visit. Physical exam revealed decreased range of motion in the left shoulder, bilateral knee pain, bilateral ankle swelling and feet deformity, decreased range of motion in the lower back with pain, decreased range of motion in the bilateral wrists, and bilateral Heberden's and Bouchard's nodules.

42. On or about July 23, 2021, Plaintiff timely requested an appeal review of the denial of his claim by PRUDENTIAL.

43. On or about October 18, 2021, Dr. Mohammed Osmani responded to a questionnaire from a reviewing physician contracted by PRUDENTIAL disagreeing with the opined restrictions and limitations and continuing to certify Plaintiff as totally and permanently disabled.

44. On or about November 02, 2021, PRUDENTIAL denied Plaintiff's appeal and upheld its decision to deny benefits as of February 18, 2021.

45. Based upon the substantial medical evidence in the possession of PRUDENTIAL at the time of the denial, its decision to deny disability insurance benefits was wrongful and contrary to the terms of the Plan.

46. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, 29

U.S.C. § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone Tire & Rubber Co. v. Bruch,* 489 U. S. 101, 113 (1989) (quoting 29 U.S.C. § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see 29 U.S.C. § 1132(a)(1)(B).

47. As a direct and proximate result of PRUDENTIAL's failure to provide Plaintiff with Plan benefits, Plaintiff has been deprived of said Plan benefits beginning on or about February 18, 2021 to the present date.

48. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

49. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan definition of disability, was, and is, eligible for coverage, and consequently he is entitled to all benefits from the Plan to which he might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits from the termination of benefits to the present. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claims consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid Plaintiff beginning on or about February 18, 2021, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which he might be entitled while receiving disability benefits including, but not limited to, any medical, vision, and dental benefits, life insurance and pension, with reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2. An order determining Plaintiff was, and is, eligible for coverage, and is entitled to future Plan benefits so long as he remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: April 29, 2022

DarrasLaw

_____
FRANK N. DARRAS
SUSAN B. GRABARSKY
PHILLIP S. BATHER
Attorneys for Plaintiff
TERRY MCDONALD